IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
SOUTHERN TRACK & PUMP, INC.,      :
                                  :
          Plaintiff,              :
                                  :
     v.                           : Civil Action No. 08-543-JJF
                                  :
TEREX CORPORATION d/b/a TEREX,    :
CONSTRUCTION AMERICAS,            :
                                  :
          Defendant.              :
```

Peter J. Walsh, Jr., Esquire and Suzanne M. Hill, Esquire of
POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.

Attorneys for Plaintiff Southern Track & Pump, Inc.

Cary E. Hiltgen, Esquire and Jeff C. Grotta, Esquire of HILTGEN
& BREWER, Oklahoma City, Oklahoma.
AnnaMartina Tyreus, Esquire of WOMBLE CARLYLE SANDRIDGE & RICE,
PLLC, Wilmington, Delaware.

Attorneys for Defendant Terex Corporation.

**MEMORANDUM OPINION**

June __9__, 2009
Wilmington, Delaware

Farnan, District Judge

Presently before the Court is Defendant's Motion To Dismiss (D.I. 9), which originally sought dismissal of Plaintiff's entire Complaint. However, after an amendment to the Complaint, Defendant now seeks dismissal of only Count III of the Amended Complaint for breach of the implied covenant of good faith and fair dealing. Also before the Court is Defendant's Motion To Dismiss Counts IV And IV Of Plaintiff's Amended Complaint (D.I. 16) for fraud and negligent or innocent misrepresentation, respectively. For the reasons discussed, the Court will grant-in-part Defendant's Motion To Dismiss Count III of the Amended Complaint for breach of the implied covenant of good faith and fair dealing. (D.I. 9.) Specifically, the Court will dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing to the extent it is based on Defendant's alleged assurances of financing assistance. However, in all other respects, the Court will allow the claim to stand. As to Defendant's Motion To Dismiss Counts IV And IV Of Plaintiff's Amended Complaint (D.I. 16), the Court will deny the Motion with leave to renew.

## BACKGROUND

### I. Procedural Background

Plaintiff Southern Track and Pump, Inc. brought this action on July 23, 2008, in the Superior Court of Delaware, seeking a

1

declaratory judgment that Defendant Terex Corporation was
required to repurchase certain inventory it had sold to
Plaintiff and alleging claims for violation of 6 Del. C. § 2720
et seq. and breach of the duty of good faith and fair dealing.
Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant removed
the action to this Court.  Defendant then brought a Motion To
Dismiss this action for failure to state a claim.  (D.I. 9.)  In
response, Plaintiff amended the Complaint and, in addition,
raised new claims for fraud and negligent or innocent
misrepresentation.  (See generally D.I. 11.)  In light of the
amendment, Defendant now pursues its Motion To Dismiss (D.I. 9)
only to the extent it seeks dismissal of the claim for breach of
the implied covenant of good faith and fair dealing.  (See D.I.
13 at 1.)  However, Defendant also brought a second Motion To
Dismiss (D.I. 16), which specifically seeks dismissal of the
newly raised claims for fraud and misrepresentation.

## II.  Factual Background

Plaintiff Southern Track & Pump, Inc. is a Florida
corporation with its principal place of business in Cocoa,
Florida.  (D.I. 11 ¶ 2.)  Defendant Terex Corporation is a
Delaware corporation with its principal place of business in
Southaven, Mississippi.  (Id. ¶ 3.)  Defendant manufactures and
markets construction equipment, such as excavators, loaders,
trucks, and backhoes.  (See D.I. 18, Exh. A.)

This litigation arises out of a Distributorship Agreement between Plaintiff and Defendant pursuant to which Plaintiff became a distributor of Defendant's products. (See D.I. 11, Exh. A.) Under the Agreement, Plaintiff was required to maintain a minimum inventory of Defendant's products, which according to Plaintiff, was such a significant undertaking that additional financing was required. (D.I. 11 ¶ 12.) Plaintiff alleges that on at least three occasions it was assured by Defendant that it would assist Plaintiff in finding favorable financing to begin operations under the Distributorship Agreement. (Id. ¶ 13.) As Plaintiff explains, "[i]t is common for manufacturers to have a captive financing arm or affiliate in order to provide dealer financing," and, although Defendant had no such resource, Plaintiff alleges that it was nevertheless led to believe that Defendant would provide some sort of finance program. (Id. ¶ 14.) In particular, Defendant allegedly represented that it had a relationship with GE Commercial Distribution Finance ("GE") and that it could leverage this relationship to secure favorable financing for Plaintiff. (Id. ¶ 13-14.) In fact, Plaintiff alleges that Defendant described this financing mechanism as a "Terex dealer finance program." (Id.) Plaintiff alleges that it entered into the Distributorship Agreement in reliance on these assurances. (Id. ¶¶ 13, 17.)

3

Having allegedly been assured that Defendant would eventually provide some sort of financing assistance, Plaintiff entered into an Inventory Financing Agreement with GE. (Id. ¶¶ 17-18.) With this financing in hand, Plaintiff acquired from Defendant the minimum inventory of product required under the Distributorship Agreement. Unfortunately, in February 2008, Plaintiff fell behind in its repayment obligations to GE. (Id. ¶ 21.) During roughly the same time frame, Plaintiff allegedly made efforts to have Defendant mediate with GE and secure more favorable financing terms. According to Plaintiff, Defendant provided assurances that it could, among other things, take back a portion of the inventory or provide subsidies to GE that would extend the amortization period of Plaintiff's loan from GE. (Id. ¶ 22.) These measures, Plaintiff contends, would have been equivalent to providing it with the more favorable financing arrangements that Defendant had allegedly promised earlier. (Id.) However, the parties never arrived at a financing solution and, in April 2008, after Plaintiff had fallen further behind in its loan repayments, GE formally informed Plaintiff that it was in default on its loan obligations. (Id. ¶ 24.)

Following these developments, Plaintiff alleges that Defendant "changed its position once again and informed [Plaintiff] that because [Defendant] had been paid in full for the equipment and had no relationship with GE, [Defendant] would

4

not intercede on [Plaintiff's] behalf" or otherwise provide any dealer assistance whatsoever. (<u>Id.</u> ¶ 24.) In fact, in May 2008, Defendant sent Plaintiff notice of termination of the Distributorship Agreement and further refused to repurchase any of Plaintiff's inventory, with the exception of $19,474.96 of Defendant's products.

In July 2008, Plaintiff initiated this action, alleging, in general, that Defendant is required under Delaware law to repurchase its inventory of products and that it has committed fraud and failed to act in good faith by not following through on its commitment to provide Plaintiff with dealer financing.

## LEGAL STANDARD

In considering a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in a complaint as true and consider them in the light most favorable to plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (interpreting Fed. R. Civ. P. 8(a)). A complaint need not contain detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than

labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do.'" Id. (citations
omitted). The "[f]actual allegations must be enough to raise a
right to relief above the speculative level on the assumption
that all of the complaint's allegations are true." Id. at 547.

## DISCUSSION

Defendant's two Motions to Dismiss (D.I. 9; D.I 16) seek
dismissal of Counts III, IV, and V of the Complaint for breach
of the duty of good faith and fair dealing, fraud, and negligent
or innocent misrepresentation, respectively. The Court will
address each of these claims in turn.

## I.  Plaintiff's Claim For The Breach Of The Duty Of Good Faith And Fair Dealing

### A.  The Parties' Contentions

Count III of Plaintiff's Amended Complaint seeks damages
for the breach of the duty of good faith and fair dealing,
which, under Delaware law, is implied in every contract,
including the Distributorship Agreement at issue in this case.
Briefly, Plaintiff "alleges that [Defendant] misled [Plaintiff]
by making false promises regarding financing both before and
after the parties entered into the Agreement and later failing
to repurchase [Plaintiff's] inventory, causing financial
hardship and depriving [Plaintiff] of the benefit of the
bargain."  (D.I. 18 at 4.)

Defendant contends that this claim must be dismissed because it does not seek to vindicate a true implied obligation of the Distributorship Agreement. Rather, it is an improper "attempt to 'forge a new agreement beyond the scope of the written agreement'" (D.I. 13 at 2 (citing Chamison v. Healthtrust, Inc., 735 A.2d 921, 921 (Del. Ch. 1999).)  Indeed, Defendant notes that the Distributorship Agreement is fully integrated and completely silent regarding the possibility of dealer financing.  (D.I. 21 at 1-2.)  Likewise, to the extent Plaintiff's claims are based on Defendant's decision not to repurchase Plaintiff's inventory, Defendant maintains that this issue is also not addressed by the Distributorship Agreement, and is, in any event, based on a statutory obligation and not a contractual obligation.  (Id. at 2.)  Specifically, Defendant contends that Plaintiff's claims based on its failure to repurchase inventory arise under 6 Del. C. § 2720 et seq., which pertains specifically to equipment dealer contracts.

Plaintiff responds that Defendant misunderstands the implied duty of good faith and fair dealing as requiring Plaintiff to anchor its claim to an explicit obligation of the Distributorship Agreement.  In fact, Plaintiff contends, "a good faith and fair dealing claim lies where the contract does not expressly address the conduct in issue, and the breaching party has frustrated the purpose of the contract by [its] conduct."

7

(D.I. 18 at 3.) According to Plaintiff, Defendant's alleged dishonesty with respect to dealer financing and its bad faith refusal to repurchase inventory constituted a breach of the implied duty to act in good faith that frustrated the overall purpose of the Distributorship Agreement.

## B. Decision

"In order to plead successfully a breach of an implied covenant of good faith and fair dealing, the plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." Fitzgerald v. Cantor, No. 16297-NC, 1998 Del. Ch. LEXIS 212, at *5 (Del. Ch. Nov. 10, 1998). The parties dispute whether Plaintiff has adequately pleaded the first element (i.e., a specific implied contractual obligation). As to the issue of what constitutes an implied contractual obligation, the Delaware Supreme Court has explained that there is an "occasional necessity of implying contract terms to ensure the parties' reasonable expectations are fulfilled." Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 442 (Del. 2005) (citations omitted). The Delaware Supreme Court elaborated that this is a "rare and fact-intensive exercise" that should be done "only when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of . . . had they thought to negotiate with respect to that

8

matter . . . ." Id. The Delaware Court of Chancery has similarly explained that "[u]nder the implied covenant of fair dealing, courts will read terms into contracts that clearly would have been included had the parties negotiated with respect to them." Price Org. v. Universal Computer Servs., No. 12505, 1993 Del. Ch. LEXIS 216, at *16 (Del. Ch. Oct. 1, 1993). Furthermore, the implied covenant should not be used to give plaintiffs "contractual protections that they failed to secure for themselves at the bargaining table." Aspen Advisors LLC v. United Artists Theatre Co., 843 A.2d 697, 707 (Del. Ch. 2004)

To the extent Plaintiff's claim is based on alleged explicit promises regarding financing, the Court concludes that it must be dismissed. Indeed, on reviewing the Distributorship Agreement, the Court notes that no such promises regarding financing ultimately made their way into the Agreement, despite the fact that the parties, as Plaintiff alleges, repeatedly discussed the topic. (See D.I. 11 ¶¶ 13-17.) In these circumstances, the Court concludes that financing promises may not be regarded as an implied contractual obligation. See Marceau Investissements v. Sonitrol Holding Co., 1991 Del. Ch. LEXIS 152, at *64 n.21 (Del. Ch. Oct. 2, 1991) ("[T]he premise of any claim for breach of an implied covenant of good faith and fair dealing is that the parties failed to negotiate with respect to the matter in issue.").

9

However, the Court will not dismiss the claim to the extent it is based on Defendant's failure to repurchase inventory. The Court agrees with Defendant that the Distributorship Agreement includes no specific obligations regarding inventory repurchase. However, unlike the issue of dealer financing, the Court sees no indication that the parties discussed this issue, yet nevertheless chose to omit it from the Distributorship Agreement. As such, on the current factual record and procedural posture, the Court is unable to conclude, as a matter of law, that this could not be the subject of an implied contractual obligation. To the extent Defendant contends that inventory repurchase obligations cannot be the subject of an implied contractual obligation because they are also the subject of a Delaware statute, the Court notes that Defendant has not cited any authority for this proposition. Ultimately, this Court may well determine that Plaintiff is unable to meet the high burden of showing that it is "clear from the writing that the . . . parties would have agreed to proscribe" Defendant's alleged failure to repurchase inventory. Dunlap, 878 A.2d at 442. However, for now, the Court will allow this aspect of Plaintiff's claim to go forward.

## II. Plaintiff's Claim For Fraud And Negligent Or Innocent Misrepresentation

The parties' legal arguments for these two claims overlap significantly, and the facts alleged by Plaintiff in support of

10

these claims differ only slightly.  Accordingly, the Court will

address these two claims together.  Defendant provides three

reasons why these claims should be dismissed.  Briefly these

reasons are (1) that Distributorship Agreement contradicts or is

silent as to the subject matter of the alleged fraud, (2) that

Plaintiff failed to plead a misrepresentation of fact, and (3)

that Plaintiff failed to plead the claims with sufficient

particularity under Rule 9(b).  The Court will address each of

these reasons in turn.[1]

---

[1] The Distributorship Agreement states that "[t]his
Agreement and any purchase and sale transactions arising hereto
shall be governed by and construed in accordance with the
internal laws of the State of Delaware."  (D.I. 18, Exh. A ¶
10.2.)  Accordingly, Plaintiff's contract claim for breach of the
implied duty of good faith and fair dealing is governed by
Delaware law, and the parties have briefed it as being so
governed.  However, in its Opening Brief in support of its Motion
To Dismiss Plaintiff's fraud and misrepresentation claims,
Defendant took the position that Florida law should govern the
fraud and misrepresentation claims.  Briefly, Defendant contends
that in tort cases, Delaware courts apply the law of the state
having the most significant relationship to the occurrence and
the parties.  (See D.I. 17 at 4 (citing Gloucester Holding Corp.
v. U.S. Tape and Sticky Products, LLC, 832 A.2d 116, 124 (Del.
Ch. 2003)).)  Defendant contends that Florida has the most
significant relationship to the fraud and misrepresentation
claims because (1) Plaintiff is a Florida corporation with a
Florida principal place of business and (2) all of Plaintiff's
locations and facilities are in Florida.  (Id. at 3-4.)  In
response, Plaintiff states that the "many of the facts alleged in
the Amended Complaint lead to the conclusion that, at least for
the time being, the substantive law of the State of Florida will
apply to" the claims for fraud and misrepresentation.  (D.I. 23
at 9-10.)  Plaintiff then briefed the Motion To Dismiss under the
assumption that Florida law governed.  Thus, although stating in
a footnote that it reserves the right to later argue for the
application of the law of another state, Plaintiff appears to
agree with Defendant that Florida law applies to the fraud and

11

A.  **Whether The Fraud And Misrepresentation Claims Should Be Dismissed Because The Distributorship Agreement Contradicts Or Is Silent As To The Subject Matter Of The Alleged Fraud**

1.  **The Parties' Contentions**

Defendant notes that the Distributorship Agreement is fully integrated, contains a limitation of liability clause, and is silent regarding the possibility of Defendant assisting Plaintiff with financing. (D.I. 17 at 4.) In these circumstances, Defendant contends that Plaintiff's alleged financing assurances cannot (1) be reasonably relied upon as a matter of law, and (2) form the basis of a fraud claim because they contradict the terms of the Distributorship Agreement. (Id. at 5.) Plaintiff responds, first, that because the Distributorship Agreement - including its limitation of liability clause - is silent on the issue of dealer financing, claims of fraud based on false assurances of dealer financing are not subsumed by the Distributorship Agreement. (See D.I. 23 at 11-12.) As to the limitation of liability clause specifically, Plaintiff notes that it says nothing about misrepresentations concerning financing and does not, in fact, purport to release Defendant from liability for fraud. With respect to the merger clause, Defendant contends that, under

misrepresentation claims. Based on the facts alleged in the Complaint, the Court agrees with the parties that Florida law governs these claims.

governing law, such provisions do not render contracts impervious to claims that they were procured by fraud.  (Id. at 11 (citing S & B Invs., LLC v. Motiva Enters., LLC, No. 03-61993, 2004 U.S. Dist. LEXIS 27502, at *15 (S.D. Fla. Dec. 6, 2004) ("[I]f a party alleges a contract was procured by fraud or misrepresentation as to a material fact, an integration or merger clause will not make the contract incontestible.")).)

## 2. Decision

"Florida courts have made clear that no action for fraud in the inducement will lie where the alleged fraud contradicts the subsequent written contract."  Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc., 262 F.Supp.2d 1334, 1342 (S.D. Fla. 1999).  Here, however, the Distributorship Agreement does not contradict the alleged fraud regarding the possibility of dealer financing.  In fact, as Defendant insists, the Distributorship Agreement is actually silent on the issue of dealer financing.  (See, e.g., D.I. 10 at 6 ("Nothing in the Agreement requires - or even suggests - that [Defendant] had any obligation to assist [Plaintiff] with financing."); D.I. 17 at 5 ("In addition, the Distributorship Agreement says nothing regarding [Defendant] providing assistance to [Plaintiff] with financing."); D.I. 21 at 1 ("Moreover, the fully integrated Agreement is silent regarding financing assistance . . . .");

13

id. ("[T]he agreement is silent concerning financing
assistance.").)

     To the extent Defendant argues that the Agreement's
limitation of liability clause is inconsistent with Plaintiff's
fraud and misrepresentation claims, the Court notes that the
clause says nothing regarding financing nor does it purport to
free Defendant from liability for fraud.  In fact, it appears to
be nothing more than a boilerplate limitation of liability
clause.²  Accordingly, the Court will not dismiss Plaintiff's
fraud and misrepresentation claims on the basis that the
Distributorship Agreement contains provisions that contradict
these claims.

     Defendant contends that the claim can nevertheless be
dismissed because it was - as a matter of law - unreasonable for
Plaintiff to rely on assurances regarding financing because

_____

     ² The full limitation of liability clause is as follows:
     Except as otherwise specified in this Agreement,
     Supplier shall have no liability for any expenditure
     made, or loss of income incurred, by the Distributor in
     preparation for performance or in the performance of
     the Distributor's obligations under this Agreement.
     Neither Supplier nor Distributor shall by reason of the
     termination, expiration or non-renewal of this
     Agreement be liable to the other for compensation,
     reimbursement or damages on account of the loss of
     prospective profits or anticipated sales or on account
     of expenditures, investments, leases, property
     improvements or commitments in connection with business
     or goodwill of the Supplier, or the Distributor, or
     otherwise.
(D.I. 18, Exh. A ¶ 10.7.)

14

those assurances never found their way into the final

Distributorship Agreement.  Thus, Defendant cites, for instance,

Barnes v. Burger Kind Corp., 932 F.Supp. 1420, 1428 (S.D. Fla.

1996), for the proposition that "even absent a merger clause . .

. it is a basic tenet of contract law that reliance on a

representation by a contracting party in a suit based on the

contract is unreasonable where the representations are not

contained in the subsequent written agreement between the

parties."  This is a rule that the Court traces to the Florida

case Saunders Leasing Sys. v. Gulf Cent. Distrib. Ctr., 513 So.

2d 1303, 1306-07 (Fla. Dist. Ct. App. 1987).  Specifically, in

Saunders, the Court of Appeal of Florida stated as follows:

> [W]hile Gulf Central argues that it would not have
> entered into the contract but for Saunders' alleged
> misrepresentations, that argument is contrary to the
> obvious fact that if those terms were so material to
> Gulf Central's bargain, they would or should have been
> included in the contract.  Since they were not, and
> particularly since Gulf Central's attorney added the
> last revisions to the contract, the argument must
> fail.

Id.

However, the Saunders rule is in tension with other Florida

case law holding more narrowly that a fraud claim based on a

prior misrepresentation is barred only when the

misrepresentation is contradicted by or otherwise expressed in

the subsequent agreement.  See, e.g., Dentaland, P.A. v. St.

Stephen, Ltd. Pshp., by & Through LEF/Delray Mall, Ltd., 729 So.

15

2d 1012 (Fla. Dist. Ct. App. 1999) ("[A] party to a contract may
not recover in fraud for alleged oral misrepresentations that
have been adequately addressed or expressly contradicted in a
later written contract . . . ."); Mejia v. Jurich, 781 So. 2d
1175, 1178 (Fla. Dist. Ct. App. 2001) ("The existence of a
merger or integration clause, which purports to make oral
agreements not incorporated into the written contract
unenforceable, does not affect oral representations which are
alleged to have fraudulently induced a person to enter into the
agreement.").  Furthermore, at least one Florida state court has
limited Saunders, describing it as involving a "specially
prepared contract negotiated by the parties' attorneys" and
noting that other cases have held that "a party cannot maintain
an action in fraud if the alleged misrepresentation is
explicitly contradictory to a specific or unambiguous provision
in a written contract."  Wilson v. Equitable Life Assurance
Soc'y, 622 So. 2d 25, 27-28 (Fla. Dist. Ct. App. 1993).
Likewise, the Eleventh Circuit has criticized the logic of
Saunders, explaining that "a rule that a fact is not material if
not included in the contract would effectively eliminate fraud
in the inducement claims, which Florida recognizes."  Gilchrist
Timber Co. v. ITT Rayonier, 127 F.3d 1390, 1395 (11th Cir.
1997).

The Court has identified one Florida federal court case that has attempted to harmonize this competing case law. Specifically, in S & B Invs., LLC v. Motiva Enters., LLC, No. 03-61993, 2004 U.S. Dist. LEXIS 27502, at *15-*16 (S.D. Fla. Dec. 6, 2004), the court distinguished cases barring fraud claims based on prior oral agreements from those allowing such claims on the basis of the former cases having the "crucial distinguishing characteristic" of "involv[ing] contracts which specifically covered the subject matter of the alleged false representation." On the other hand, the cases that allowed fraud claims to go forward, the S & B court explained, involved "apparent boilerplate integration clauses, which in essence merely recited that the signed document embodied the entire agreement of the partes . . . ." Id. On reviewing the Florida case law, the Court concludes that this is the distinction that should guide the Court in this case. As explained above – and as Defendant insists – the Distributorship Agreement is silent on the subject of dealer financing and thus does not appear to contradict any alleged prior representations regarding dealer financing. Likewise, the integration clause of the Distributorship Agreement makes no mention of dealer financing and appears to be a standard integration clause. Accordingly, the Court will not dismiss Plaintiff's fraud and

misrepresentation claims on the basis that the Distributorship
Agreement fails to address the issue of dealer financing.

**B.    Whether The Fraud And Misrepresentation Claims Should
        Be Dismissed Because Plaintiff Fails To Allege A
        Misrepresentation of Fact**

**1.    The Parties' Contentions**

According to Defendant, although Plaintiff alleges
misrepresentations regarding Defendant's possible future
actions, Plaintiff fails to allege any misrepresentations of
actual present or past fact.  Defendant contends that only the
latter suffice to state a claim for fraud or misrepresentation.
(Id. at 6-7.)  Plaintiff responds, first, that the Amended
Complaint does, in fact, allege misrepresentations of fact.
Specifically, Plaintiff contends that the Complaint alleges that
Defendant falsely represented (1) that the GE financing
agreement was part of its "dealer finance program," and (2) that
Plaintiff had a relationship with GE such that it could offer
certain financing terms to Plaintiff and negotiate successfully
with GE on its behalf.  (Id. at 15 (citing D.I. 11 ¶¶ 13, 14,
20, 22).)  Second, Defendant contends that, in any event,
misrepresentations of future assurances are sufficient to
withstand a motion to dismiss.  In particular, Plaintiff notes
that under Florida law "if the plaintiff can demonstrate that
the person promising future action does so with no intention of
performing or with a positive intention not to perform, such a

promise may also constitute a fraudulent misrepresentation."
Mejia, 781 So. 2d at 1177.

### 2. Decision

The Court agrees with Plaintiff that, under Florida law,
fraud claims may, in some situations, be predicated on future
assurances.   See, e.g., Noack v. Blue Cross & Blue Shield, Inc.,
742 So. 2d 433, 434 (Fla. Dist. Ct. App. 1999) ("[U]nder certain
circumstances, a promise may be actionable as fraud where it can
be shown that the promissor had a specific intent not to perform
the promise at the time the promise was made . . . ."); Palmer
v. Santa Fe Healthcare Systems, Inc., 582 So. 2d 1234, 1236
(Fla. Dist. Ct. App. 1991) ("A promise as to future conduct may
serve as a predicate for a claim of fraud if it is made without
any intention of performing, or with the positive intention not
to perform."). Accordingly, the Court will not dismiss
Plaintiff's fraud and misrepresentation claims on the basis of
an alleged failure to plead misrepresentations of fact.

### C. Whether The Fraud And Misrepresentation Claims Should Be Dismissed Because Plaintiff Has Failed To Plead The Claims With Sufficient Particularity

#### 1. The Parties' Contentions

Finally, Defendant contends that Plaintiff has failed to
plead its fraud and misrepresentation claims with the required
level of particularity under Fed. R. Civ. P. 9(b).
Specifically, Defendant maintains that Plaintiff has failed to

adequately allege the manner, place, date, and speaker of the
alleged misrepresentations and any facts to support an inference
of intent to deceive. (Id. at 8-10.) Plaintiff responds that
although it may not have identified, for instance, particular
speakers and specific dates, Rule 9(b) only requires a plaintiff
to identify the "circumstances" of the fraud or
misrepresentation. (D.I. 23 at 18.) Plaintiff maintains that
its Complaint identifies sufficient "circumstances" to place
Defendant on notice of the precise misconduct with which it is
charged. (Id. at 17-18.)

### 2. Decision

The Court agrees with Defendant that Plaintiff has not
pleaded fraud and negligent or innocent misrepresentation with
adequate particularity under Rule 9(b). On reviewing the
Amended Complaint, the Court finds that it identifies few, if
any details, regarding the content, manner, and circumstances of
the alleged fraud. In addition, the Court finds that the
Amended Complaint fails to identify a single individual who was
involved in the alleged fraud. Likewise, the Amended Complaint
identifies only broad months-long time frames when the alleged
misrepresentations took place. In the Court's view, the Amended
Complaint in its current form fails to include the required
"measure of substantiation" or "sufficient factual specificity
to provide assurance that plaintiff has investigated . . . the

20

alleged fraud and reasonably believes that a wrong has
occurred."  Household Int'l, Inc. v. Westchester Fire Ins. Co.,
286 F. Supp. 2d 369, 373 (D. Del. 2003).  Nevertheless,
Plaintiff explains that it can in fact specify these details and
provide additional documentation in support of a second Amended
Complaint.  (See D.I. 23 at 23.)  Accordingly, the Court will
give Plaintiff an opportunity to amend its Amended Complaint.
Thus, the Court will, at this juncture, deny Defendant's Motion
To Dismiss to the extent it is based on Plaintiff's failure to
plead with sufficient particularity.  However, the Court will
give Defendant leave to renew its Motion to address genuine
pleading deficiencies that may persist in Plaintiff's Second
Amended Complaint.

## CONCLUSION

For the reasons discussed, the Court will grant-in-part
Defendant's Motion To Dismiss Count III of the Amended Complaint
for breach of the implied covenant of good faith and fair
dealing. (D.I. 9.)  Specifically, the Court will dismiss
Plaintiff's claim for breach of the implied covenant of good
faith and fair dealing to the extent it is based on Defendant's
alleged assurances of financing assistance.  However, in all
other respects, the Court will allow the claim to stand.  As to
Defendant's Motion To Dismiss Counts IV And IV Of Plaintiff's

Amended Complaint (D.I. 16), the Court will deny with Motion with leave to renew.

An appropriate Order will be entered.