IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOUTHERN TRACK & PUMP, INC.,        :
                                    :
          Plaintiff,                :
                                    :
     v.                             : Civil Action No. 08-543-JJF
                                    :
TEREX CORPORATION d/b/a TEREX,      :
CONSTRUCTION AMERICAS,              :
                                    :
          Defendant.                :

_____

Peter J. Walsh, Jr., Esquire and Suzanne M. Hill, Esquire of
POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.

Attorneys for Plaintiff Southern Track & Pump, Inc.

Cary E. Hiltgen, Esquire and Jeff C. Grotta, Esquire of HILTGEN &
BREWER, Oklahoma City, Oklahoma.

AnnaMartina Tyreus, Esquire of WOMBLE CARLYLE SANDRIDGE & RICE,
PLLC, Wilmington, Delaware.

Attorneys for Defendant Terex Corporation.

_____

**MEMORANDUM OPINION**

July 13, 2010
Wilmington, Delaware.

Farnán, District Judge.

Pending before the Court are three motions filed by Defendant Terex Corporation ("Terex"). Terex's motions consist of its Motion To Dismiss Counts IV And V And Portions Of Count III Of Plaintiff's Second Amended Complaint (D.I. 55), Motion For Leave To Supplement Motion To Dismiss (D.I. 85), and Motion For Leave To Amend Terex's Answer To Second Amended Complaint And Amended Counterclaim. (D.I. 89.) Plaintiff Southern Track and Pump, Inc. opposes the motions. For the reasons discussed, the Court will deny Defendant's Motion to Dismiss and Motion For Leave To Supplement The Motion to Dismiss, and will grant Defendant's Motion For Leave To Amend Its Answer.

## I. BACKGROUND

### A. Procedural Background

Plaintiff Southern Track and Pump, Inc. brought this action on July 23, 2008, in the Superior Court of Delaware, seeking a declaratory judgment that Defendant Terex Corporation was required to repurchase certain inventory it had sold to Plaintiff and alleging claims for violation of 6 Del. C. § 2720 et seq. and breach of the duty of good faith and fair dealing. Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant removed the action to this Court.

Following two Motions to Dismiss brought by Defendant, the

Court dismissed Plaintiff's claim for breach of the implied covenant of good faith and fair dealing to the extent it was based on Defendant's alleged assurances of financing assistance on June 9, 2009. (D.I. 44, 45.) However, the Court allowed the remainder of Count III to stand. (Id.) Additionally, the Court denied Defendant's Motion to Dismiss Counts IV And V Of Plaintiff's Amended Complaint, but gave Defendant leave to renew. (Id.) Lastly, the Court ordered Plaintiff to file a second Amended Complaint that pleads claims for fraud and negligent or innocent misrepresentation with greater particularity. (Id.)

In response to the Court's Order (D.I. 45), Plaintiff filed its Second Amended Complaint (D.I. 49) on June 29, 2009. In response to Plaintiff's Second Amended Complaint, Defendant filed the instant motions.

### B. Factual Background

Plaintiff is a Florida corporation with its principal place of business in Cocoa, Florida. (D.I. 49 ¶ 2.) Defendant is a Delaware corporation with its principal place of business in Southaven, Mississippi. (Id. ¶ 3.) Defendant manufactures and markets construction equipment, such as excavators, loaders, trucks, and backhoes. (See Id. Ex. A.)

This litigation arises out of a Distributorship Agreement between Plaintiff and Defendant pursuant to which Plaintiff became a distributor of Defendant's products. (See Id. Ex. A.)

Under the Agreement, Plaintiff was required to maintain a minimum inventory of Defendant's products, which according to Plaintiff, was such a significant undertaking that required additional financing. (Id. ¶¶ 22-32.) Plaintiff alleges it was assured by Defendant that it would assist Plaintiff in finding favorable financing to begin operations under the Distributorship Agreement through several meetings with Terex's regional sales representative Ken Doan and several other Terex employees. (Id. ¶¶ 4-19.) Plaintiff alleges that during these meetings, which took place between December 2006 and February 2007, Mr. Doan made assurances about Terex's relationship with the financing entity GE Commercial Distribution Finance ("GE") which would finance the deal. (Id.) Plaintiff further alleges that Mr. Doan offered Plaintiff a four part financing program in which Plaintiff would have 1) a six month period in which it did not have to make payments, 2) a nine month period where Plaintiff would not be charged interest, followed by 3) payments over a 60 month amortization period, and 4) a 1.87% interest rate. (Id. ¶ 6.) Plaintiff alleges that it entered into the Distributorship Agreement with Defendant in reliance on these assurances. (Id. ¶ 19.)

Having allegedly been assured that Defendant would eventually provide some sort of financing assistance, Plaintiff, in March 2007, entered into an Inventory Financing Agreement with GE. (Id. ¶ 28.) With this financing in hand, Plaintiff acquired

from Defendant the minimum inventory of product required under the Distributorship Agreement. (Id. ¶ 31.) Defendant did subsidize Plaintiff's agreement with GE regarding the six month payment-free and nine month interest-free period. ((Id. ¶ 35.) On March 28, 2007, Defendant entered into a recourse agreement with GE that did not contain the terms Plaintiff alleges were offered to it by Mr. Doan. (Id. ¶ 36.)

Plaintiff alleges that it learned three months before the "floor plan period," or period of reduced payments and interest, expired that it would be charged an interest rate of one point over the prime rate and that the balance of the principal would be amortized over 54 months, as opposed to 60 months. (Id. ¶ 37.) In February 2008, Plaintiff fell behind in its repayment obligations to GE. (Id. ¶ 39.) During roughly the same time frame, Plaintiff allegedly made efforts to have Defendant mediate with GE and secure more favorable financing terms. According to Plaintiff, Defendant provided assurances that it could, among other things, take back a portion of the inventory or provide subsidies to GE that would extend the amortization period of Plaintiff's loan from GE. (Id. ¶ 40.) These measures, Plaintiff contends, would have been equivalent to providing it with the more favorable financing arrangements that Defendant had allegedly promised earlier. (Id.) However, the parties never arrived at a financing solution and, in April 2008, after Plaintiff had fallen further behind in its loan repayments, GE

formally informed Plaintiff that it was in default on its loan obligations. (Id. ¶ 41.)

Following these developments, Plaintiff alleges that Defendant "changed its position once again and informed [Plaintiff] that because [Defendant] had been paid in full for the equipment and had no relationship with GE, [Defendant] would not intercede on [Plaintiff's] behalf" or otherwise provide any dealer assistance whatsoever. (Id. ¶ 42.) In fact, in May 2008, Defendant sent Plaintiff notice of termination of the Distributorship Agreement and further refused to repurchase any of Plaintiff's inventory, with the exception of $19,474.96 of Defendant's products. (Id. ¶¶ 43-44.)

In July 2008, Plaintiff initiated this action, alleging, in general, that Defendant is required under Delaware law to repurchase its inventory of products and that it has committed fraud and failed to act in good faith by not following through on its commitment to provide Plaintiff with dealer financing.

## II. DEFENDANT'S MOTION TO SUPPLEMENT ITS MOTION TO DISMISS

The parties dispute whether Defendant should be allowed to supplement its Motion to Dismiss. (D.I. 85.) Through its motion Defendant seeks to have the Court consider Transaction Statements, documents referenced in the Inventory Finance Agreement between Plaintiff and GE. (D.I. 86.) Defendant argues that the Transaction Statements can be properly considered

6

because they were incorporated into the Inventory Financing Statement which was attached to the pleadings. (Id.) Plaintiff argues that consideration of the Transaction Agreements should not be permitted because the documents are not part of the pleadings and would consequently convert the Motion to Dismiss into a Motion For Summary Judgment under Fed. R. Civ. P. 56(c). (D.I. 103.) Additionally, Plaintiff argues that the Transaction Statements do not impact Plaintiff's justifiable reliance claims. (Id.)

Under Fed. R. Civ. P. 10(c) "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." In addition to an exhibit attached to a complaint, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993); see also Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); Burtch v. Milberg Factors, Inc., Civ. No. 07-556-JJF-LPS, 2009 U.S. Dist. LEXIS 26872, *16 (D. Del. Mar. 30, 2009).

If a defendant attaches documents to a motion to dismiss that are not a part of the pleadings, the motion will be

converted to a motion for summary judgment as a result of the court considering matters outside the pleadings. This is required based on Fed. R. Civ. P. 12(b)(6) and 56(c).

The Court concludes that granting Defendant's Motion to Supplement would require the Court to convert the Motion to Dismiss into a motion for summary judgment because it would present matters outside of the pleadings. In the circumstances here, the Court determines that the Transaction Statements are not central to Plaintiff's claims. The Inventory Financing Agreement was attached to Plaintiff's Second Amended Complaint (D.I. 49 Ex. B) and it does state that Transaction Statements will be used between the parties (Plaintiff and GE) to provide the terms of specific transactions. (Id.) Despite this incorporation of the Transaction Statements into the agreement, they do not represent a central element of Plaintiff's claims. Plaintiff's Counts IV and V allege that Defendant deceived it into acting and that a part of the action taken was to enter into the Inventory Financing Agreement with GE. (Id. ¶¶ 70-79.) The inclusion of the Inventory Financing Agreement as an exhibit to the Second Amended Complaint provides the relevant evidence of Plaintiff's contentions and the Transaction Statements are not needed to support Plaintiff's claims.

Thus, the Court will deny Defendant's Motion to Supplement Its Motion To Dismiss. (D.I. 85.)

## III. DEFENDANTS' MOTION TO DISMISS

Defendant's Motion To Dismiss (D.I. 55) requests that the Court dismiss Plaintiff's tort claims for Fraud and Negligent or Innocent Misrepresentation. Because of the intertwined relationship of the two tort claims, the Court will evaluate them together. Defendant presents a number of reasons why the claims should be dismissed: 1) Plaintiff's claims are not alleged with the necessary particularity, 2) Plaintiff's inducement claims are barred as a matter of law, 3) Plaintiff's claims based on post-contractual promises are barred by the statute of frauds, and 4) further amendment to Plaintiff's claims would be futile. (D.I. 56.) Plaintiff argues that none of the grounds sought for dismissal are sufficient to overcome the standards used within the context of a motion to dismiss. Each of those arguments will be addressed in turn.

The parties stipulated that Defendant's request to dismiss regarding Count III of the Second Amended Complaint should be denied based on Plaintiff's agreed alterations to the Second Amended Complaint. (D.I. 63.) Thus, the portion of Defendant's Motion to Dismiss relating to Count III will be denied.

### A. Legal Standard Under Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Assuming the factual allegations are true, even if doubtful in fact, the "factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While the complaint need not make detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. (internal quotations and citations omitted). Thus, stating a claim upon which relief can be granted "'requires a complaint with enough factual matter (taken as true) to suggest' the required element" of a cause of action. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(citing Twombly, 550 U.S. at 556.) In sum, if a complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), then the complaint is "plausible on its face," and will survive a motion to dismiss under Rule 12(b)(6). Twombly, 550 U.S. at 570.

## B. Evaluation Of The Particularity Of Plaintiff's Tort Claims

### 1. Parties' Contentions

Defendant contends that Plaintiff has failed to plead its fraud and misrepresentation claims with the required level of particularity under Fed. R. Civ. P. 9(b). (D.I. 56.) Specifically, Defendant argues that Plaintiff has failed to properly allege the place or identity of the speaker of the misrepresentation, to demonstrate intent to deceive, to allege the proper date, and to rectify the allegations with the fact that Plaintiff received two of the four alleged financing promises. (Id.) Plaintiff contends that it has met the particularity requirement through the Second Amended Complaint because the pleadings provide Defendant with notice of the circumstances of the claims and the ability to prepare a defense. (D.I. 70.)

### 2. Legal Standard On Particularity

Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of

11

fraud.

<u>Seville Industrial Machinery Corp. v. Southmost Machinery Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984). Stated another way, "the requirement of particularity does not require an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated the alleged fraud and reasonably believes that a wrong has occurred." <u>Household Int'l, Inc. v. Westchester Fire Ins. Co.</u>, 286 F. Supp. 2d 369, 373 (D. Del. 2003)(internal citation and quotation omitted).

Because the tort claims are evaluated under Florida law,[1] the Florida standards for evaluating the torts is relevant in determining if the elements of the torts have been plead with particularity. The elements for fraud in Florida are:

(1) a false statement or misrepresentation of material fact;
(2) the representor's knowledge at the time the misrepresentation is made that the statement is false;
(3) an intention that the misrepresentation induce another to act;
(4) action in justifiable reliance on the representation; and
(5) resulting damage or injury.

<u>Meterlogic, Inc. v. Copier Solutions, Inc.</u>, 126 F. Supp. 2d 1346, 1363 (S.D. Fla. 2000). Similarly the elements for negligent misrepresentation are:

(1) a misrepresentation of material fact;

---

[1] As noted in the Court's prior Memorandum Opinion the parties have contended and the Court agrees that Florida law governs the tort claims. (<u>See</u> D.I. 44 n.1.)

12

(2) that the representor either knew or should have known was false or made without knowledge of truth or falsity; (3) the representor intended to induce another to act on the misrepresentation; and (4) resulting injury to a party acting in justifiable reliance on the misrepresentation.

Id.

### 3. Decision

Defendant presents four arguments why Plaintiff failed to properly plead its tort claims. First, Defendant argues that Plaintiff failed to allege the place or identity of the speaker of the misrepresentation with particularity. Regarding location, Defendants argue that the place of the misrepresentation is unclear because the Amended Complaint identifies Plaintiff's principal place of business as Cocoa, Florida while the Distributorship Agreement identifies its principal place of business as Fort Pierce, Florida. (D.I. 56 at 8.) Plaintiff argues that Defendant is merely attempting to confuse the issue that can be simply explained, Fort Pierce was its place of business at the time of the misrepresentation and agreement and Cocoa is the current place of business. The Court concludes that this discrepancy does not violate the Rule 9(b) particularity requirement because Plaintiff has shown the necessary level of specificity to show its belief that a wrong occurred. A post-agreement change of address does not create confusion in the pleading.

Regarding the identity of the speaker alleged to have made

13

the misrepresentation, the Court is not convinced by Defendant's argument that the pleading is insufficient. First, Plaintiff specifically identified Mr. Doan in the Second Amended Complaint as the party who made the alleged misrepresentations. (D.I. 49 ¶¶ 4-6.) Second, Defendant's argument that it has not been alleged that Mr. Doan had authority to bind Defendants in an agreement is without substantiation. The case cited by Defendant where lack of authority is in question refers to the unknown authority of an unknown speaker. See In re: Rockefeller Ctr. Props. Sec. Litig., 311 F.3d 198, 218 (3d Cir. 2002). Thus, Defendant's argument regarding Mr. Doan's authority is without merit in the context of the pleading requirement to identify a speaker as Mr. Doan was clearly identified in the Second Amended Complaint. Lastly, Plaintiff's allegation that Mr. Doan made fraudulent statements in front of other named Terex employees who remained silent does not support a lack of particularity argument. While Plaintiff may later attempt to use the named parties' silence, it has only alleged that Mr. Doan made the misrepresentations, thus any other parties' silence does not negate the sufficiency of the pleading.

Second, Defendants argue that Plaintiff failed to plead sufficiently that Defendant or its agents, specifically Mr. Doan, intended to deceive Plaintiff into acting based on the Financing Agreement. (D.I. 56 at 10.) Defendant argues that under the standard established in In re: Burlington Coat Factory Securities

14

Litigation, 114 F.3d 1410 (3d Cir. 1997), intent must be plead
with facts that show a basis for inferring that the defendant
acted with scienter.  (D.I. 56 at 10.)  Plaintiff asserts that
the Burlington standard is inappropriate in this case because
that case specifically required a higher standard of
particularity because it was a securities case, but that even if
the standard is applied, intent is alleged with particularity.
(D.I. 70 at 20.)

The Third Circuit has distinguished between the general Fed.
R. Civ. P. 9(b) requirements that intent may be averred generally
and the heightened scienter requirement that supercedes it in
securities litigation.  See In re: Advanta Corp. Sec. Litig., 180
F.3d 525, 531 n.5 (3d Cir. 1999).  In Advanta the Third Circuit
clearly differentiated between the two standards and made it
clear that the heightened standard applies only to securities
litigation.  Id.  The Court previously recognized that a
heightened standard of pleading is not required in non-securities
cases and concluded that fraud was adequately pled when a
plaintiff's complaint demonstrated that the plaintiff had
"investigated the alleged fraud and that they reasonably believed
that a wrong has occurred."  Household Int'l, Inc. v. Westchester
Fire Ins. Co., 286 F. Supp. 2d 369, 379 (D. Del. 2003)(internal
citation omitted).

Thus, the Court concludes that Plaintiff has pled intent to
defraud with sufficient particularity.  In the Second Amended

Complaint Plaintiff alleges that Defendant knew of the importance of the allegedly promised financing terms, through Mr. Doan, and that Defendant promised those terms while never intending to supply them. From those alleged facts, Plaintiff has alleged that a promise was made and Defendant had no intent to perform on that promise at the time it was made. Thus, the Court concludes the intent to defraud has been pled with sufficient particularity.

Defendants next particularity argument is that Plaintiff has not pled the relevant dates of the alleged misrepresentations with sufficient particularity. (D.I. 56 at 11.) Defendants contend that Plaintiff's allegation that the misrepresentations took place near the end of 2006 and in February 2007 are insufficient. (Id. (citing D.I. 49 ¶¶ 4, 16).) Plaintiff contends that such a time frame is sufficient.

As noted above, time is a useful means of pleading with sufficient particularity, but it is not required by Rule 9(b). See Seville Industrial, 742 F.2d at 791. This requirement is flexible because the purpose of Rule 9(b) is to provide "defendants notice of the claims against them." In re: Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 270 (3d Cir. 2006)(internal citation omitted). When time or date is used for particularity to provide the necessary notice "the time requirement is not exact, the plaintiff must . . . allege 'an approximate time frame.'" Zaptron (HK) Ltd. v. Air Sea Trasnp.,

16

Inc., 221 F.R.D. 482, 484 (N.D. Ill. 2004)(citing Hernandez v. Childers, 739 F. Supp. 903, 912 (N.D. Ill. 1990)).

The Court concludes that Plaintiff has pled the appropriate dates with sufficient particularity. Plaintiff has provided a relatively small time frame, December 2006 to February 2007, where the alleged misrepresentations took place. That time frame is sufficient to provide Defendant clear "notice of the claims against it." A time frame of three months in which multiple meetings took place provide Defendant with sufficient information to the circumstances of the alleged misrepresentation and thus satisfy the particularity purpose of Rule 9(b).

Lastly, Defendant argues that particularity is not met because Plaintiff received two of the four elements of the allegedly fraudulent promise. (D.I. 56 at 11.) Although Defendant's contention accurately represents Plaintiff's pleadings, it does not provide any support for dismissal of Plaintiff's tort claims. While the completion of a portion of the alleged promise may impact the amount of damages available, it has no influence on the particularity requirements.

Thus, Defendant's Motion to Dismiss will be denied as it relates to the Fed. R. Civ. P. 9(b) particularity requirements.

## C. Defendant's Contention That Plaintiff's Inducement Claims Are Barred As A Matter Of Law

Defendant contends that Plaintiff's fraud and misrepresentation claims are barred as a matter of law because

17

the Inventory Financing Agreement explicitly deals with the financing and thus, under Florida law, there can be no recovery for fraud or misrepresentation. (D.I. 56 at 12.) Defendant argues that this contention is different than that in the Court's prior Memorandum Opinion (D.I. 44) because the prior decision concerned the Distributorship Agreement while the instant Motion deals with the Inventory Financing Agreement. (D.I. 75 at 3.) Plaintiff contends that Defendant's argument is merely an attempt to revive an argument that was previously dismissed by the Court. (D.I. 70 at 23.)

In the Court's Memorandum Opinion (D.I. 44), the Court provided an extensive recitation of the relevant Florida law and concluded that the Distribution Agreement is silent on financing terms. (Id.) In applying Florida law the Court followed S & B Invs., LLC v. Motiva Enters., LLC, No. 03-61993, 2004 U.S. Dist. LEXIS 27502, at *15-16 (S.D. Fla. Dec. 6, 2004), which distinguished between cases barring fraud claims based on prior oral agreements from those allowing such claims on the basis of the former cases having the "crucial distinguishing characteristic" of "involv[ing] contracts which specifically covered the subject matter of the alleged false representation."

Regarding the instant dispute, the Court concludes that Plaintiff's Inventory Financing Agreement with GE does not present a situation in which the instant claims should be dismissed. In the Court's view, Plaintiff's act of entering into

18

a subsequent contract with a third party after entering into the contract where the alleged inducement took place does not fit within the case law cited by Defendant. The case law cited by Defendant relates to situations in which the alleged inducement was barred because the contract that the plaintiff claimed they were induced into signing expressly disavowed the alleged terms and was between the parties in the suit. See Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc., 262 F. Supp. 2d 1334, 1342 (S.D. Fla. 1999); Wilson v. Equitable Life Assurance Soc'y, 622 So. 2d 25, 27-28 (Fla. Dist. Ct. App. 1993). Thus, in the Court's view, the Inventory Financing Agreement does not fit within the context of the cases and standard cited by Defendant because it was a subsequent agreement with a third party. The relevant document to Defendant's standard is the Distributorship Agreement, which, as discussed in the Court's prior Memorandum Opinion, is silent on the disputed financial terms and thus does not bar the claims.

Therefore, the Court will deny Defendant's Motion as it relates to the barring of inducement claims.

## D. Defendant's Contention That Plaintiff's Claims Based Upon Alleged Post-Contract Promises Are Barred By The Statute Of Limitations

Defendant argues that any claims Plaintiff makes regarding post-contractual promises are barred by the statute of limitations. (D.I. 56 at 14.) Plaintiff asserted that it has

not presented a claim for breach of post-contractual promises, arguing only that the course of Defendant's fraud continued past the date of contracting. (D.I. 70 at 25.) Because Plaintiff has stated that it is not pursuing claims based on any post-contractual promises, Defendant's Motion as it relates to post-contractual promises will be denied.

## E. Defendant's Contention That Further Amendment Of Plaintiff's Tort Claims Would Be Futile

Defendant's final contention is that any further amendment to Plaintiff's tort claims would be futile and thus leave to amend should not be granted. (D.I. 56 at 16.) Because the Court determined that Plaintiff's tort claims will not be dismissed, Defendant's argument on further amendment will be denied.

## F. Conclusion

For the reasons discussed, the Court will deny Defendant's Motion to Dismiss.

## IV. DEFENDANT'S MOTION TO AMEND ITS ANSWER TO THE SECOND AMENDED COUNTERCLAIM

### A. Legal Standard

"After amending once or after an answer has been filed, the plaintiff may amend only with leave of the court or the written consent of the opposing party." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)(citing Fed. R. Civ. P. 15(a)). The district court has discretion in granting a motion to amend, Foman v.

Davis, 371 U.S. 178, 182 (1962), and "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has adopted a liberal policy favoring the amendment of pleadings to ensure that claims are decided on the merits rather than on technicalities. Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990). Amendment should ordinarily be permitted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc." Foman, 371 U.S. at 182.

If a party moves for leave to amend the pleadings after a deadline imposed by a Scheduling Order, Rule 16 of the Federal Rules of Civil Procedure is also implicated. Pursuant to Rule 16(b), "a schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). After a pleading deadline has passed, the Third Circuit requires a showing of good cause in order to amend. See E. Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 340 (3d Cir. 2000)(affirming district court's denial of motion for leave to amend because no showing of good cause to modify scheduling order was made); see also Dimensional Commc'ns, Inc. v. OZ Optics, Ltd., 148 Fed. Appx. 82, 85 (3d Cir. 2005)(citing E. Minerals to disagree with assertion that Third Circuit had not adopted the good cause requirement when ruling on motions to amend a pleading after a

scheduling order deadline has passed). "Good cause" exists when the Schedule cannot reasonably be met despite the diligence of the party seeking the extension. Fed. R. Civ. P 16(b)(4) Advisory Committee's Notes (1983 amendments). "In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." Roquette Freres v. SPI Pharma, Inc., C.A. No. 06-540-GMS, 2009 WL 1444835, at *4 (D. Del. May 21, 2009).

## B. Parties' Contentions

By its motion (D.I. 89), Defendant seeks leave to amend its Answer to the Second Amended Complaint, specifically to add a counterclaim. (D.I. 90.) Defendant seeks to add a claim against Plaintiff to recover money it paid to GE as part of a Recourse Agreement following Plaintiff's default. (Id.) Defendant contends that it has a subrogation right against Plaintiff due to its payment to GE and that the subrogation right has been denied because Plaintiff did not arbitrate with GE. (Id.) Defendant argues that it both learned of the existence of arbitration proceedings between Plaintiff and GE and learned that Plaintiff was not taking part in the proceedings after the pleadings deadline and acted diligently with the information once it was obtained.

Plaintiff responds that the Motion should be denied because Defendant has not demonstrated that it was diligent or had good

22

cause in the untimely pleading and because the amendment would be futile. (D.I. 102.) Plaintiff asserts that the amendment would be futile because there are no grounds for subrogation because the Recourse Agreement did not reduce the amount of money owed to GE by Plaintiff and Defendant did not act equitably towards Plaintiff. (Id. at 13-14.)

## C. Decision

### 1. Rule 16(b)

The Court concludes that Defendant has demonstrated good cause to file its Amended Answer, and that the amendment could not have been made before the April 27, 2009 pleading deadline, despite Defendant's diligence. Although Defendant was aware of the possibility of being obligated to pay recourse payments substantially before the pleading deadline, the specific nature of the debt between Plaintiff and GE did not become apparent to Defendant until after the pleading deadline when it learned of the status of the arbitration proceedings. Defendant reasonably anticipated that the arbitration proceedings between Plaintiff and GE would be the appropriate forum to address its subrogation claim, thus there was not a lack of diligence. Once Defendant discovered that Plaintiff was not taking part in the arbitration proceedings it acted relatively quickly in filing the instant Motion to Amend.

### 2. Rule 15(a)

The Court concludes that Defendant's Motion to amend is proper under Fed. R. Civ. P. 15(a). The only substantial issue presented by Rule 15(a) is whether or not the amendment is futile. Plaintiff has not argued that the amendment is prejudicial.

Plaintiff argues that Defendant's amendment would be futile because no factual situation argued by Defendant could present grounds for which subrogation is proper. (D.I. 102.) An amendment of a complaint is futile if it fails to state a claim upon which relief can be granted. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)(citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)). In determining the futility of a proposed amendment, the Court must apply the same standard of legal sufficiency as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Id. If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." Harrison Beverage Co. v. Dribeck Imp., Inc., 133 F.R.D. 463, 468-69 (D.N.J. 1990)(citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed. 1990)).

In considering the proposed subrogation claim under the standard of required by Fed. R. Civ. P. 12(b)(6) the Court concludes that the claim is not futile.

Thus, under Rule 15(a) the Court should grant leave to Defendant to amend its Answer.

## V. CONCLUSION

For the reasons discussed, the Court will deny Defendant's Motion To Dismiss Counts IV And V And Portions Of Count III Of Plaintiff's Second Amended Complaint (D.I. 55) and Motion For Leave To Supplement Motion To Dismiss (D.I. 85), and will grant Defendant's Motion For Leave To Amend Terex's Answer To Second Amended Complaint And Amended Counterclaim. (D.I. 89.)

An appropriate order will be entered.